1
2
3
4
5
6
7
8
9
10                     **UNITED STATES DISTRICT COURT**
11                         **DISTRICT OF NEVADA**
12
13  ANTHONY ROSS BLACK,              )        3:05-cv-00316-HDM-VPC
                                     )        3:03-cv-00292-HDM-VPC
14                  Petitioner,      )
                                     )
15  vs.                             )        ORDER
                                     )
16  E.K. McDANIEL, *et al.*,         )
                                     )
17                  Respondents.     )
    _____ )
18
19
20       Before the court is petitioner Anthony Ross Black's petition
    for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, filed
21
    with the court on May 25, 2005.  (3:05-cv-00316, docket 2).
22
    Petitioner is an inmate at Lovelock Correctional Center, and has
23
    filed this action *in propria persona*.
24
25
    I. Factual and Procedural Background
26
         On September 3, 1997, petitioner was charged by way of
27
    information with seven criminal counts stemming from his alleged
28

                                    1

sexual conduct with a minor, Britni DeBarge.  (Exhibit A).[1]
Specifically, petitioner was charged with one count of first degree
kidnapping, one count of lewdness with a child under the age of
fourteen, and five counts of sexual assault of a minor under the
age of sixteen.  (Id.).  According to the information filed by the
state on September 3, 1997 as well as testimony presented at trial,
the petitioner drove Britni DeBarge, a ten-year old girl who lived
in his apartment building, to a remote area in Las Vegas, and
committed a series of unlawful sexual acts against her will.  In
addition to the various acts described in the counts themselves,
which included multiple forms of sexual penetration by the
petitioner, the victim testified that the petitioner forced her to
urinate on him.  (Exhibit HH).  Petitioner's alleged deviant
sexual proclivities became a critical component of the state's case
at trial, as discussed below.

    Petitioner's jury trial began on October 15, 1998.  (Exhibits
HH, II, JJ, KK).  Several witnesses provided testimony, including
the victim, Britni DeBarge.  (Exhibit HH).  He was found guilty on
all counts (exhibit KK), and was sentenced as follows, with each
sentence to run consecutively:

| Count 1, | First Degree Kidnapping, | 5 years to life and restitution of $1,000; |
| Count 2, | Lewdness with a Child Under 14, | 32-120 months; |

---

[1] Unless otherwise noted, exhibits referenced are from the government's motion to dismiss (3:03-cv-00292, dockets 20, 22-23, exhibits A through DD), and answer to the petition (3:05-cv-00316, dockets 18-21, exhibits EE through VV).

Counts 3-7,    Sexual Assault on a Minor Under 16    20 years to life
                                                                 for each count.
(Exhibit B).


The judgment of conviction was filed on February 16, 1999.  (Id.).

       Petitioner appealed.  (Exhibit C).  He claimed four grounds
for relief (exhibit R): first, that the trial court had abused its
discretion in admitting evidence of his prior rape conviction, as
well as his Rape Relapse Prevention documents, which he claims had
been improperly obtained.  Second, he claimed he had suffered
prejudice at trial when the state failed to conduct a forensic
examination of the inside of his car before it released the car to
the agency holding title.  Third, he claimed that the state's
witnesses had improperly supported the victim's credibility and
testimony.  Fourth, the trial court had abused its discretion by
allowing the victim to carry a stuffed animal with her to the
witness stand and denying petitioner's motion for a mistrial.  The
Nevada Supreme Court affirmed petitioner's conviction, holding that
the trial court properly admitted the evidence of petitioner's
Oregon conviction to demonstrate motive, intent, opportunity,
preparation, plan, knowledge, identity or absence of mistake or
accident.  (Exhibit U).  The court further held that while the
trial court had erred in admitting documents obtained through the
petitioner's participation in a Rape Relapse Program, the error was
harmless in light of the overwhelming evidence presented against
petitioner at trial.  (Id.).  With respect to the petitioner's
contention that the state had improperly disposed of the car in
which the crime had allegedly taken place, the court concluded that

3

1   the car had been rendered useless for the purpose of evidence

2   collection because it had been in a serious accident following the

3   crime.  (Id.).  The court also determined that petitioner had not

4   properly preserved the issue of prosecutorial misconduct for

5   appeal, and waived the challenge of the judge's denial of a

6   mistrial on appeal.  Finally, the court concluded that because

7   petitioner had failed to object to the state's witnesses at the

8   time of trial, he could not raise the issue of their credibility on

9   appeal.  (Id.).  The Nevada Supreme Court affirmed the judgment of

10  conviction on May 25, 2000.  (Id.).

11      Petitioner then filed a *pro se* petition for a writ of habeas

12  corpus in the state trial court on September 12, 2000.  (Exhibit

13  E).  He subsequently filed two supplements to his petition

14  (exhibits F, G), and the state responded.  (Exhibit I).  The court

15  appointed counsel for the petitioner, who then filed a supplemental

16  petition on behalf of the petitioner.  (Exhibit K).  The petition

17  was denied in a written order filed December 6, 2001.  (Exhibit Q).

18  Petitioner appealed (exhibit X), and on May 7, 2003, the Nevada

19  Supreme Court affirmed the trial court's denial of the petition.

20  (Exhibit CC).

21      Petitioner submitted a *pro se* federal petition for a writ of

22  habeas corpus to this court on November 18, 2003 (hereinafter

23  "First Federal Petition").  (3:03-cv-00292, docket 10).  He then

24  filed a statement of additional claims, adding several new grounds

25  for relief to his petition.  (3:03-cv-00292, docket 13).

26  Petitioner's First Federal Petition and the additional claims are

27  ordered such that each ground for relief is broken down into

28  subclaims labelled "facts", and each of these facts is further

4

subdivided into subclaims.  Petitioner's claims in his First

Federal Petition are summarized as follows:[2]


Ground 1.   Ineffective assistance of counsel, in violation of
            petitioner's rights under the Sixth and Fourteenth
            Amendments to the United States Constitution.

     Fact 1.   Counsel failed to make any investigation into the
               petitioner's account of events for the purpose of
               establishing the reliability of the petitioner's
               testimony at trial and claim of innocence.

               a.  Counsel did not produce either Jennifer
               Richards, Britni DeBarge's friend, or the receipt
               from the convenience store "Grumpy's," which would
               have supported petitioner's version of events.

               b. Counsel did not present evidence of petitioner's
               "goal oriented activities" to counteract the
               victim's testimony that petitioner raped her so that
               he could "go back to prison and die."

               c. Counsel did not investigate or present the
               testimony of Priscilla Pacheco, petitioner's former
               girlfriend, who could have countered the victim's
               testimony about petitioner's state of mind and would
               testify as to his good character.

               d. Counsel did not investigate or present the
               testimony of Frank Pacheco who could have testified
               about the petitioner's good character.

     Fact 2.   Counsel failed to investigate the burglary of the
               petitioner's residence following petitioner's arrest
               for sexual assault, which formed the basis of
               petitioner's chief defense at trial.  The petitioner
               informed counsel that the victim's false sexual
               assault claims were part of a larger scheme
               perpetrated by the victim, her mother, and her
               mother's boyfriend that culminated in the burglary
               of petitioner's apartment.  As a result of the
               break-in, private documents created by the
               petitioner during his incarceration and treatment
               for a prior sexual assault conviction ended up in
               the victim's mother's (Kim DeBarge's) possession.
               These documents contained descriptions of the

---

[2] The court's formulations of these issues and supporting facts are somewhat different from respondents' formulations of them, but the numbering assigned by petitioner and adopted by respondents remain consistent. The court's treatment of petitioner's claims turns upon the language in his petitions, not upon these summaries.

petitioner's sexual fantasies and fetishes, including urination and defecation as a means of sexual arousal.

a. Counsel did not investigate or interview Rodney Jackson, Kim DeBarge's desperate and jealous boyfriend, who the petitioner believed was the likely burglar.

b. Counsel did not investigate or interview Jill Kline, the apartment complex manager, who would have provided information about the victim's association with Jackson as well as her general demeanor just days after the alleged rape.

c. Counsel did not interview or investigate Kim DeBarge, even though Kim DeBarge would have known the sexual assault charges were false, and even though she had participated in the burglary of petitioner's apartment with Jackson.

d. Counsel did not procure Kim DeBarge's phone records to support petitioner's contention that Jackson had burgled his apartment and, using a stolen address book, made telephone calls to Black's friends' phone numbers.

e. Counsel did not investigate or present testimony from Jennifer Richards, the victim's friend. Petitioner believes Richards would have provided testimony that both the victim and Richards had previously been in the petitioner's apartment, despite the victim's testimony to the opposite, which would have bolstered his claim that they were responsible for the burglary.

Fact 3.  Counsel failed to interview or investigate the background of the alleged victim, and to request a psychological evaluation of her.  The petitioner provided counsel with ample reason to suggest that the victim's mental state, her living environment, and potential physical abuse might lead her to fabricate the charges against him.

a. Counsel should have investigated and sought a psychological evaluation of the victim, which would have provided a critical insight into her motivation and would have shown her to be a "troubled" child.

Fact 4.  Counsel failed to object to the state's illegal break in the chain of custody of the petitioner's car; failed to investigate the evidentiary value of the car; and failed to procure an expert criminalist.

a. Had counsel investigated into the vehicle in which the assault allegedly took place, he would have discovered that after only thirteen days, the vehicle had been released to its owner/lessor, which denied the petitioner an opportunity to conduct an independent investigation for physical evidence in the car.

b. Counsel failed to investigate the existence of any physical evidence in the vehicle and did not establish what evidence or testimony the state might present with respect to the car. Counsel should have hired an expert criminalist to counter the state witness' testimony that all physical evidence that might have been found in the vehicle was obliterated as a result of the rollover accident the petitioner was in immediately after the alleged rape.

Fact 5.    Counsel failed to interview each and every witness for the prosecution. Counsel failed to interview the victim, Kim DeBarge, Detective Love, C.S.A. Horn, and Serologist Cook. He did not interview Kay Barrett or Dr. Bruhn.

a. Kay Barrett, the woman who discovered the victim on Calico Basin Road immediately after the alleged assault, would have been able to testify that the petitioner was no longer present on that road. Counsel should have investigated into what the victim said to Barrett and other potentially relevant information that might have been used to undercut the incriminating effects of her testimony at trial.

b. Had counsel interviewed or investigated Dr. Bruhn, the State's medical expert, he would have been able to ascertain how the doctor could diagnose "probable abuse" when there was no physical evidence to support the finding.

Fact 6.    Counsel did not object to apparent incidents of prosecutorial misconduct.

a. Counsel did not object when the prosecutor made false statements during his closing arguments related to the presence of physical evidence of sexual assault, the testimony of Kay Barrett, and the petitioner's documents.

b. Counsel did not object to the prosecution receiving stolen property from the petitioner's apartment and its failure to investigate the burglary of the petitioner's apartment. The

prosecution was duty-bound to make a good faith determination of whether the victim possessed the documents by determining if her fingerprints were present on them.

c. Counsel did not object to the prosecution's destruction of exculpatory evidence through the release of the vehicle in which the assault took place without notice to the petitioner or his attorney.

d. Counsel did not object when the petitioner's Sixth Amendment right to confront witnesses against him was subverted by the admission of statements made by his prior victim (Velma Williams) without producing the victim herself.

e. Counsel did not object when the prosecution relied on sympathy for the victim elicited through the presence in court of the victim's tearful mother and by allowing the victim to testify while clutching a stuffed animal.

f. Counsel did not object to the prosecution's potential *Brady* violations in failing to provide documentation of the victim's alleged psychological treatment.

Fact 7.    Counsel failed to object to apparent Equal Protection and Due Process violations.

a. The trial court relied on the legal proposition that it need not weigh the probative value of the petitioner's prior bad acts against the prejudicial effect because the evidence of an emotional propensity for sexual aberration is relevant and outweighs any prejudice.

b. The trial court relied on the legal proposition that evidence of an emotional propensity to commit the alleged crimes was relevant because such evidnce showed sexual aberration and was admissible.

Fact 8.    Counsel failed to prepare the petitioner prior to testifying at trial.  Counsel did not discuss the petitioner's testimony with him and did not provide petitioner with a preview of the types of questions he would be asked.

Fact 9.    The cumulative effect of counsel's failures amounted to a breakdown in the adversarial process, rendering the trial fundamentally unfair and its outcome unreliable.

Additional Claims:

8

Ground 2.   During pre-trial proceedings the petitioner suffered
            violations of his Equal Protection rights under the Fifth
            and Fourteenth Amendments attributable to the ineffective
            assistance of counsel.

Ground 3.   The trial court erred in appointing appellate counsel due
            to a conflict of interest between the petitioner and the
            attorney, in violation of petitioner's Fifth, Sixth, and
            Fourteenth Amendment rights to Due Process.

Ground 4.   Appellate counsel was ineffective on direct appeal based
            on errors of trial counsel and for failing to procure
            transcripts of the opening and closing arguments of
            petitioner's trial.

Ground 5.   Prosecutorial misconduct occurred at trial when the state
            (1) lied about information within the "treatment
            documents;" (2) violated the Confrontation Clause; (3)
            broke the chain of custody with respect to the
            petitioner's car; and (4) lied during the closing
            arguments.  These violations were attributable to the
            ineffective assistance of counsel.

Ground 6.   The petitioner's Equal Protection rights under
            the Fifth and Fourteenth Amendments were violated when
            the trial court relied on legal propositions that had not
            been legislatively approved.  The violation is attributed
            to ineffective assistance of counsel.

Ground 7.   The petitioner's rights under the Confrontation Clause
            were violated when the statements of his previous sexual
            assault victim were admitted into evidence through the
            testimony of Oregon police officers.  This violation
            resulted from the ineffective assistance of his counsel.

Ground 8.   Petitioner's Due Process rights guaranteed by the Fifth
            and Fourteenth Amendments were violated when there was a
            break in the chain of custody of the vehicle, permitting
            the state to make the bare claim that the vehicle had no
            evidentiary value due to its post-accident condition.
            This claimed violation resulted from the ineffective
            assistance of trial counsel.

Ground 9.   The cumulative effects of all the grounds raised denied
            the petitioner a fair trial as guaranteed by the Fifth,
            Sixth, and Fourteenth Amendments as there was no
            "overwhelming evidence" upon which to convict him.

     On February 11, 2004, respondents filed a motion to dismiss

petitioner's First Federal Petition, asserting that certain of

petitioner's claims were not exhausted in state court.  (3:03-cv-

9

00292, docket 20).  On June 17, 2004, the court granted in part and
denied in part respondents' motion to dismiss.  (3:03-cv-00292,
docket 33).  Specifically, the court found that Ground 1(1)(b),
Grounds 1(2)(b), (c), (d), and (f), Ground 1(4)(a), Ground 1(5)(a)
and (b), Ground 1(6)(a)-(c) and (e)-(f), Ground 1(7)(a) and (b),
Ground 1(8) and Grounds 2-9, were unexhausted, and that the motion
to dismiss was granted with respect to those grounds.  (Id.).  The
court denied the motion to dismiss, however, with respect to
Grounds 1(1)(a), (c), and (d), 1(2)(a) and (e), 1(3), 1(4)(b),
1(6)(d), and 1(9).  (Id.).  The court ordered petitioner to either
voluntarily abandon the unexhausted claims made in his First
Federal Petition and proceed with only those claims that had been
exhausted, or dismiss the petition without prejudice in order to
return to state court to exhaust his state remedies with respect to
those claims the court found unexhausted.  (Id.).  The court denied
petitioner's subsequent motion for reconsideration of its order.
(3:03-cv-00292, dockets 34-38).

On September 20, 2004, petitioner filed a formal declaration
to dismiss his First Federal Petition without prejudice to exhaust
the claims the court found to be unexhausted in state court. (3:03-
cv-00292, ocket 41).  The court therefore ordered the action
dismissed without prejudice to allow the petitioner to return to
state court to exhaust his claims, and closed the case
administratively, without entering judgment, on September 29, 2004.
(Docket 40, 3:03-cv-00292).  The court further indicated that, upon
exhaustion of his claims in state court, the petitioner could
return to this court, and "make a motion to reopen this action,
under the case number, and before the same undersigned United

10

1   States District Court Judge."   (Id.).

2        On October 7, 2004, petitioner subsequently returned to state

3   court and filed his second state petition seeking a writ of habeas

4   corpus, which set forth many, but not all, of those claims in his

5   first federal petition found unexhausted by this court.   (Exhibit

6   LL).   Specifically, petitioner presented claims 1(1)(b), 1(2)(b),

7   (c), (d), and (f), 1(4)(a), 1(5)(a) and (b), 1(6)(a), (b), (c),

8   (e), and (f), 1(7)(a) and (b), and 1(8).   (Id.).   Petitioner did

9   not, however, present claims 2 through 9 of his first federal

10  petition.   (Id.).   Respondents argue that petitioner has therefore

11  waived those claims for the purposes of petitioner's second federal

12  petition now before the court.   (Resp. Answer at 18).   The court

13  agrees.

14       In addition to filing his second petition for habeas relief in

15  state court, petitioner also filed a supplemental habeas petition

16  based on the doctrine of "actual innocence," with supporting

17  documentation, and requested an evidentiary hearing.   (Exhibits MM,

18  NN).   Petitioner's claim in this supplemental petition re-states

19  his principal defense at trial, and a position that he has

20  maintained throughout his post-conviction proceedings.   He contends

21  that he had been set up by the victim in an elaborate scheme that

22  allowed the victim's mother and her boyfriend to burglarize his

23  apartment.   (Exhibit MM).   Among the items stolen from petitioner's

24  apartment were the documents relating to his Rape Relapse

25  Prevention Program, outlining petitioner's deviant sexual

26  tendencies.   (Id.).   Petitioner's implication with this defense is

27  that the documents were used to manufacture the false allegations

28  made against the petitioner by the victim.   (Id.).

1    The Nevada trial court denied both petitions.  (Exhibit PP).
2 The denial was affirmed by the Nevada Supreme Court on the basis
3 that the second habeas petition was time barred and successive
4 under Nevada law, and the petitioner's claim of actual innocence
5 was "no more than a rehashing of the claims raised in his first
6 post-conviction habeas corpus petition," as well as unsupported by
7 the record.  (Exhibit UU).

8    Petitioner thereafter filed a motion seeking to reopen his
9 habeas case in federal court.  (3:03-cv-00292, docket 42).  On May
10 25, 2005, the court granted the motion under a new case number, but
11 indicated that the case would be a continuation of petitioner's
12 previous action.  (3:05-cv-00316, docket 1).  The petitioner filed
13 a second petition for a writ of habeas corpus (hereinafter "Second
14 Federal Petition"), which the court docketed in the new case file.
15 (3:05-cv-00316, docket 2).  In his Second Federal Petition,
16 petitioner substantially re-ordered his claims for relief.  (Id.).
17 Petitioner's claims in his Second Federal Petition are summarized
18 as follows, with a footnote indicating where that claim may be
19 found in the First Federal Petition:

20
21 Ground 1.  Ineffective assistance of counsel in violation of
                petitioner's Sixth and Fourteenth Amendment Due Process
22                rights.

23        Fact 1.   Counsel failed to make any investigation into the
                    petitioner's account of events for the purpose of
24                    establishing the reliability of the petitioner's
                    testimony at trial and claim of innocence.

25                    a. Counsel did not produce either Jennifer Richards,
                        Britni DeBarge's friend, or the receipt from the
26                        convenience store "Grumpy's," which would have
                        supported petitioner's version of events.[3]

27

28
        _____
        [3] This claim is made in Ground 1(1)(a) of the First Federal Petition.

b. Counsel did not investigate or present the testimony of Priscilla Pacheco, petitioner's former girlfriend, who could have countered the victim's testimony about petitioner's state of mind and would have testified as to his good character.[4]

Ground 2.  Ineffective assistance of counsel in violation of petitioner's Sixth and Fourteenth Amendment Due Process rights.

Fact 1.   Counsel failed to investigate the background or obtain a psychological evaluation of the victim, despite petitioner's insistence that her background may have led her to fabricate the charges against him.

a. The victim should have undergone a psychological evaluation, which would have revealed that she was a "troubled child," and would have provided insight into why she acted the way she did.[5]

Ground 3.  Ineffective assistance of counsel in violation of petitioner's Sixth and Fourteenth Amendment Due Process rights.

Fact 1.   Counsel failed to object to the State's illegal break in the chain of custody of the petitioner's car; failed to investigate the evidentiary value of the car; and failed to procure an expert criminalist.[6]

a. Counsel failed to procure a criminalist who could have refuted the government's claim that the car could not be examined for bodily fluid because of its condition after it crashed.

Ground 4.  Ineffective assistance of counsel in violation of petitioner's Sixth and Fourteenth Amendment rights and his right to confront witnesses against him.

Fact 1.   Counsel failed to object during the pre-trial evidentiary hearing when the court admitted statements made by petitioner's prior rape victim, in violation of his Sixth Amendment right to

---

[4] This claim is made in Ground 1(1)(c) of the First Federal Petition.

[5] This claim is made in Ground 1(3)(a) of the First Federal Petition.

[6] These claims are made in Ground 1(4) of the First Federal Petition and the subclaims therein.

1    confront witnesses against him.[7]

2    Ground 5.  Ineffective assistance of counsel during pre-trial
              proceedings and at trial in violation of petitioner's
3             Sixth and Fourteenth Amendment rights.

4        Fact 1.    Trial counsel failed to develop a reasonable defense
                    strategy and failed to investigate petitioner's
5                   case.  In particular, trial counsel failed to
                    substantiate petitioner's allegation about the
6                   burglary of his apartment, which he believes was
                    connected to the false sexual assault allegations
7                   leveled against him by the victim.  As part of the
                    scheme against him, the boyfriend of the victim's
8                   mother, R.D. Jackson, was able to obtain
                    approximately $3,000 from petitioner's apartment.[8]
9
    Ground 6.  Ineffective assistance of counsel in violation of
10             petitioner's Sixth and Fourteenth Amendment rights.

11       Fact 1.    Petitioner claims that the cumulative effect of the
                    errors based on ineffective assistance of counsel,
12                  listed below, prejudiced the trial to the extent
                    that no reasonable juror could have found the
13                  petitioner guilty of all the crimes charged.

14                  a. Counsel failed to object to prejudicial
                    prosecutorial misconduct related to the State's
15                  closing argument in which the state allegedly stated
                    that the victim suffered a laceration to her genital
16                  area, when in fact she had only a "very small
                    superficial abrasion."[9]
17
                    b. Counsel failed to object to the trial court's
18                  denial of the petitioner's motion for a mistrial.  A
                    mistrial was warranted given that the court allowed
19                  the victim to walk into the courtroom carrying a
                    stuffed "Tigger" doll, and jurors heard the victim's
20                  mother sobbing loudly during the victim's
                    testimony.[10]
21
                    c. Counsel failed to interview every one of the
22                  state's witnesses.  In particular, counsel failed to
                    interview Kay Barrett, the witness who saw the
23                  victim wandering in Redrock Calico Basin following
                    the sexual assault, and Dr. Frederick Buhn, the
24                  physician who examined the victim following the
25
26    [7] This claim is made in Ground 1(6)(d) of the First Federal Petition.

27    [8] This claim is made in Ground 1(2)(a) of the First Federal Petition.

      [9] This claim is made in Ground 1(6)(a) of the First Federal Petition.
28
      [10] This claim is made in Ground 1(6)(e) of the First Federal Petition.

14

assault.[11]

      d. Counsel failed to object to and investigate the alleged break in custody of the petitioner's car in which the assault took place.[12]

      e. Counsel failed to present any evidence demonstrating a lack of motive on the petitioner's part to commit the sexual assault, such as evidence of his goal-oriented activities.[13]

Ground 7. Due to the cumulative effect of the ineffective assistance of counsel the petitioner received, petitioner was denied a fair trial, in violation of the Sixth and Fourteenth Amendments.

Respondents answered petitioner's Second Federal Petition (3:05-cv-00316, docket 18), and the petitioner replied (3:05-cv-00316, docket 22).

II.   Federal Habeas Corpus Standards

28 U.S.C. §2254(d), a provision of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), provides the legal standard for the Court's consideration of this habeas petition:

      An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim --

      (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

      (2)  resulted in a decision that was based

---

[11] These claims were made in Ground 1(5)(a) and (b) of the First Federal Petition.

[12] This claim is made in Ground 1(4)(a) of the First Federal Petition.

[13] This claim is made in Ground 1(1)(b) of the First Federal Petition.

1
2
>                on an unreasonable determination of the facts
>                in light of the evidence presented in the State
>                court proceeding.

3
4
28 U.S.C. §2254(d).

5
6
7
8
9
10
11
12
13
14
     A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Supreme Court's] precedent." *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000), and citing *Bell v. Cone*, 535 U.S. 685, 694 (2002)).

15
16
17
18
19
20
21
22
23
24
     A state court decision is an unreasonable application of clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254(d), "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer v. Andrade*, 538 U.S. at 75 (quoting *Williams*, 529 U.S. at 413). The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous; the state court's application of clearly established law must be objectively unreasonable. *Id.* (*quoting Williams*, 529 U.S. at 409).

25
26
27
28
     In determining whether a state court decision is contrary to, or an unreasonable application of, federal law, this Court looks to the state courts' last reasoned decision. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072,

1  1079 n.2 (9th Cir. 2000), *cert. denied*, 534 U.S. 944 (2001).

2      Moreover, "a determination of a factual issue made by a State

3  court shall be presumed to be correct," and the petitioner "shall

4  have the burden of rebutting the presumption of correctness by

5  clear and convincing evidence."  28 U.S.C. § 2254(e)(1).

6

7  III.   <u>Standards Governing Claims of Ineffective Assistance of</u>

8  <u>Counsel</u>

9      The bulk of petitioner's constitutional claims in his first

10  and second petitions for habeas relief are for ineffective

11  assistance of counsel.  In *Strickland v. Washington*, 466 U.S. 668

12  (1984), the Supreme Court established the standards by which claims

13  of ineffective counsel are to be measured.  In *Strickland*, the

14  Court propounded a two prong test; a petitioner claiming

15  ineffective assistance of counsel must demonstrate (1) that the

16  defense attorney's representation "fell below an objective standard

17  of reasonableness," and (2) that the attorney's deficient

18  performance prejudiced the defendant such that "there is a

19  reasonable probability that, but for counsel's unprofessional

20  errors, the result of the proceeding would have been different."

21  *Strickland*, 466 U.S. at 688, 694.

22      Regarding the first prong of the test, the *Strickland* Court

23  expressly declined to articulate specific guidelines for attorney

24  performance beyond generalized duties, including the duty of

25  loyalty, the duty to avoid conflicts of interest, the duty to

26  advocate the defendant's cause, and the duty to communicate with

27  the client over the course of the prosecution.  *Id*. at 688.

28  Defense counsel's duties are not to be defined so exhaustively as

to give rise to a "checklist for judicial evaluation ... [because] [a]ny such set of rules would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions."  *Id*. at 688-89.

The *Strickland* Court instructed that review of an attorney's performance must be "highly deferential," and must adopt counsel's perspective at the time of the challenged conduct, in order to avoid the "distorting effects of hindsight."  *Id.* at 689.  A reviewing court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance ... [and] the [petitioner] must overcome the presumption that ... the challenged action might be considered sound trial strategy."  *Id*. (citation omitted).

Construing the Sixth Amendment to guarantee not effective counsel *per se*, but rather a fair proceeding with a reliable outcome, the *Strickland* Court concluded that demonstrating that counsel fell below an objective standard of reasonableness alone is insufficient to warrant a finding of ineffective assistance.  In order to satisfy *Strickland's* second prong, the defendant must show that the attorney's sub-par performance prejudiced the defense. *Id*. at 691-92.  The test is whether there is a reasonable probability that, but for the attorney's challenged conduct, the result of the proceeding in question would have been different. *Id*. at 691-94.  The Court defined reasonable probability as "a probability sufficient to undermine confidence in the outcome." *Id*. at 694.

The *Strickland* Court was clear that both deficient representation and prejudice are necessary showings to support an

Case 3:05-cv-00316-HDM-VPC   Document 37   Filed 06/23/08   Page 19 of 35

ineffectiveness claim, and the Court expressly instructed that "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies.... If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Id*. at 697.

IV. <u>Analysis</u>

Even though petitioner's Second Federal Petition is ordered differently from his First Federal Petition, the claims made in the second may be identified somewhere in the first.  To avoid any confusion concerning the different numbering schemes the petitioner used in his first and second petitions, the court will reference the claims according to the numbering format in his First Federal Petition, with a footnote reference to its location in the Second Federal Petition.  However, as respondents point out, a few of the claims petitioner made in his First Federal Petition that were deemed exhausted by the court in its June 17, 2004, order do not appear in petitioner's Second Federal Petition.  Respondents take the position that, as petitioner did not re-state those claims in his Second Federal Petition, he has effectively waived those claims.  (Resp. Answer at 23).  In light of the fluid nature of petitioner's claims, many of which appear factually closely entwined and occasionally indistinguishable, as well as the court's obligation to construe a *pro se* litigant's pleadings liberally, the court will address all those claims found exhausted in his First Federal Petition, as well as the exhausted claims presented in his

Second Federal Petition.

1.    Ineffective Assistance of Counsel Claims Denied by the
Nevada Supreme Court

a. Overview of Claims

In Ground 1(1)(a)[14] petitioner claims that his counsel was ineffective for failing to produce Jennifer Richards, a witness who could have refuted the timeline of the events of the crime that the victim presented, and supported petitioner's version.  In addition, petitioner claims in this ground that his counsel was ineffective by not producing a receipt from a convenience store petitioner allegedly patronized at the time of the crime, which would have undermined the victim's version of events.

In Ground 1(1)(c)[15] petitioner claims that his counsel was ineffective when he failed to produce his ex-girlfriend, Priscilla Pacheco, who would have testified to Black's character and "goal-oriented activities," and would have provided testimony to undermine the victim's testimony at trial.

In Ground 1(2)(a)[16] petitioner claims that counsel was ineffective because of his failure to investigate the burglary of the petitioner's residence following his arrest.  Petitioner alleges he provided his counsel with facts to investigate that would have substantiated this defense, including statements made by the victim, a stolen address book which Jackson used to call certain individuals connected to the petitioner, and documents

---

[14] Ground 1(1)(a) of Second Federal Petition.

[15] Ground 1(1)(b) of Second Federal Petition.

[16] Ground 5(1) of Second Federal Petition.

pertaining to the petitioner's prior criminal conviction.

In Ground 1(3)[17] petitioner claims that his counsel was ineffective because of his failure to investigate the victim, and to request a psychological examination of her.  Petitioner claims that such an examination would have provided insight into her motives to lie and set up the petitioner.  The examination would also have shown how "troubled" the victim was, in part because of her sexual background.

In Ground 1(4)(b)[18] petitioner claims that his counsel was ineffective because of his failure to engage a criminalistics expert to examine the car in which the sexual activity allegedly took place for exculpatory evidence.  According to the petitioner, such an expert would have been able to refute the state's claim that any tests on the car would have been useless because of the car's condition.

In Ground 1(6)(d)[19] petitioner claims that his counsel did not object to a possible Sixth Amendment violation of the petitioner's right to confront witnesses.  He asserts that because the prosecution relied on statements made by the victim of the petitioner's previous sexual assault, he should have been able to confront that victim at trial. The petitioner claims that there is some dispute as to the reliability of the victim's statements concerning the petitioner's behavior during that crime.

In Ground 1(9)[20] petitioner claims that the cumulative effect

---

[17] Ground 2 of Second Federal Petition.

[18] Ground 3(1)(a) of Second Federal Petition.

[19] Ground 4 of Second Federal Petition.

[20] Ground 7 of Second Federal Petition.

of counsel's failures amounted to a breakdown in the adversarial process, and as a consequence, the trial was unfair, and its outcome unreliable.

    b.   Denial of Grounds 1(1)(a), 1(1)(c), 1(2)(a)

    Petitioner raised grounds 1(1)(a), 1(1)(c), and 1(2)(a) of his First Federal Petition in his first state petition for habeas relief in Nevada trial court, and, upon their denial there, appealed the claims to the Nevada Supreme Court. (Exhibit X, Ground I(A)). Each of the claims relates to the petitioner's trial counsel's alleged ineffectiveness in investigating petitioner's version of events, which he believes would have been substantiated by testimony from additional witnesses. While petitioner's brief to the Nevada Supreme Court did not specifically identify all of the witnesses that are named in the federal claim, it does reiterate the argument presented in the state petition, which did in fact identify the witnesses. *See* Exhibits E, K. The Nevada Supreme Court affirmed the denial, stating, "[a] thorough review of the record reveals BLACK's claims of ineffective assistance of counsel are wholly without merit. BLACK has not shown his counsel to be deficient or that he was prejudiced by his counsel's actions." (Exhibit CC at p.2). With respect to petitioner's claim that his counsel was ineffective for failing to investigate petitioner's version of the events, the Court held that "the evidence [against BLACK] was overwhelming and the slight benefit that could have been obtained did not affect the trial outcome."

(Id.).  The court cited to *Evans v. State*, 28 P.3d 498, 507 (Nev. 2001)(citing *Kirksey v. State*, 923 P.2d 1102, 1107 (Nev. 1996)), and *Strickland v. Washington*, 466 U.S. 668, 687 (1984), for the proposition that to succeed on a claim of ineffective assistance of counsel, the petitioner must show that his counsel's performance was both "deficient and prejudicial."  (Exhibit CC at 2).

To succeed with his ineffective assistance of counsel claims in his habeas petition here, petitioner must demonstrate that the Nevada Supreme Court's holding was contrary to clearly established Supreme Court precedent.  Furthermore, petitioner must carry his burden under *Lockyear v. Andrade*, of demonstrating that its application of the Supreme Court's case law was objectively unreasonable.  *Lockyear*, 538 U.S. at 75.  He has not done so.  In its affirmance, the Nevada Supreme Court clearly identified the appropriate standard articulated by the United States Supreme Court, and its application of the facts of this case to that standard is entitled to deference.  *Strickland*, 466 U.S. at 689. The petitioner has failed to carry his burden of proof.  **Grounds 1(1)(a), 1(1)(c), 1(2)(a) of the petition are therefore denied.**

c. Denial of Ground 1(3)

Petitioner raised Ground 1(3) in his First State Petition, and upon its denial, appealed the claim to the Nevada Supreme Court. (Exhibit X, Ground I(D)).  Addressing petitioner's claim in this ground that his trial counsel was ineffective for failing to conduct a psychological examination of the victim, the Nevada Supreme Court found:

23

1
2
3
4
5
6
7
8
9

"A defendant is entitled to have a child-victim psychologically examined if he provides a compelling reason for the examination.[21]  This court weighs three factors to determine whether a compelling reason existed.  The factors are (1) whether the prosecution used a psychological expert; (2) minimal or no corroboration beyond the child victim's testimony; and (3) a reasonable basis for believing the emotional or mental state of the victim might have had an effect on her veracity.[22]  Black's counsel might have thought a request for a psychological examination imprudent without a compelling reason.  Evidence of Black's guilt was overwhelming and the prosecution did not present evidence of the child-victim's psychological state of mind.  Further, the record does not reflect that the child-victim's veracity was affected by her emotional or mental state.  We therefore conclude this claim is without merit."

10

(Exhibit CC at 2-3).

11
12
13
14
15
16
17
18
19
20
21

As stated above, this court must exercise deference in its review of the Nevada Supreme Court's decision, and the petitioner must demonstrate that its application of the Supreme Court's case law was objectively unreasonable.  *Lockyear*, 538 U.S. at 75.  Furthermore, to succeed on this claim here, petitioner must demonstrate that his counsel at trial did not exercise reasonable professional judgment in his decision not to conduct a psychological examination of the victim, and must overcome the presumption that, "under the circumstances, the challenged action 'might be considered sound trial strategy.'"  *Strickland*, 466 U.S. at 689-90 (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

22
23
24
25
26

Petitioner has failed to demonstrate that the Nevada Supreme Court misapplied Supreme Court case law.  The Nevada Supreme Court concluded that petitioner's trial counsel exercised professional judgment in his decision not to conduct a psychological examination of the victim, and in light of the "overwhelming" evidence of

27
28

---

[21] Citing *Koercschner v. State*, 13 P.3d 451, 455 (Nev. 2000).

[22] Citing *Koerschner,* 13 P.3d at 455.

petitioner's guilt, his decision was reasonable.  This conclusion is consistent with the Supreme Court's holding in *Strickland* that counsel must be accorded deference in those decisions that reflect sound trial strategy.  Petitioner argues that the victim had a "troubled emotional state of mind," and that a psychological examination would have revealed her "capacity to fabricate charges of sexual crimes."  (Second Fed. Pet. at 17).  His defense at trial and through his habeas petition includes the claim that the victim sought to entrap him so that her mother and mother's boyfriend could burglarize his apartment.  The Nevada Supreme Court found that these arguments did not present a compelling reason for a psychological examination, and that petitioner's trial counsel's election to forego a psychological examination was reasonable.  This court agrees, and for these reasons, **Ground 1(3) is denied.**

    d. Denial of Ground 1(4)(b)

    In ground 1(4)(b), petitioner states that his trial counsel was ineffective for failing to conduct a criminalistics analysis of the car.  He raised this claim in his first state petition, and, upon its denial by the trial court, petitioner appealed it to the Nevada Supreme Court.  (Exhibit X, Ground II(A)).  The Nevada Supreme Court concluded that:

> ". . . forensic tests of BLACK's vehicle would have been useless due to its post-accident condition.  Trial counsel cross-examined officers about their failure to perform tests on the vehicle and challenged the State's contention that dirt and debris prevented the officers from finding evidence of the sexual assault.  Trial counsel was not ineffective for opting to forego an expert witness to testify that there was a remote possibility evidence could have been retrieved from BLACK's vehicle."

(Exhibit CC at 3-4).

1    The court denies this ground for the same reasons as those
2    previously discussed.  Petitioner has not indicated how the Nevada
3    Supreme Court's holding is a clearly unreasonable application of
4    Supreme Court precedent, nor has he shown that his trial counsel's
5    actions amounted to ineffective assistance of counsel such that,
6    had his counsel sought the testimony of a criminalistics expert,
7    there is a reasonable probability that the outcome of the trial
8    would have been different.  **Ground 1(4)(b) is therefore denied.**

9

10        e. Denial of Ground 1(6)(d)

11        Petitioner also raised Ground 1(6)(d) in his first state
12   petition, and, upon its denial by the trial court, appealed to the
13   Nevada Supreme Court.  (Exhibit X, Ground II(C)).  Petitioner
14   alleges that his counsel was ineffective for failing to object to
15   the use by the prosecution of statements made by the victim of
16   petitioner's previous sexual assault.  Specifically, he claims that
17   he should have been able to confront the victim of his previous
18   crime as long as the prosecution was going to use statements she
19   made at the time of the previous crime.  In its affirmance of the
20   trial court's denial of the petition, the Nevada Supreme Court
21   stated,

22       "BLACK argues counsel was ineffective for failing to object to
         the officer's belief that BLACK forced the elderly-victim to
23       urinate and defecate on him.  We conclude the evidence was clear
         and convincing that BLACK's assault of the elderly-victim involved
24       bodily-excretion.  An officer testified that the elderly-victim
         said BLACK raped her, sodomized her, and forced her to perform
25       fellatio on him.  Fecal matter was found on the elderly-victim's
         body.  Further, BLACK admitted during an interview with Oregon
26       police that he forced the elderly-victim to urinate and defecate on
         him. . . .  Furthermore, BLACK is barred from raising a
27       confrontation clause claim regarding prior statements made by the
         elderly-victim because he did not raise the claim on direct
28       appeal."

1 (Exhibit CC at 4-5).

2      The court denies petitioner's claim for similar reasons as
3 stated above.  First, petitioner has not shown that the Nevada
4 Supreme Court failed to apply the appropriate Supreme Court
5 precedent to this claim.  At petitioner's trial, the court allowed
6 the introduction of testimony by an Oregon officer concerning
7 statements made by the victim of petitioner's sexual assault
8 conviction there.  The court allowed the evidence on the basis that
9 it helped establish petitioner's motive, intent, and modus operandi
10 for the assault against Britni Debarge.  The Nevada Supreme Court
11 concluded that the trial court's decision was properly based on
12 clear and convincing evidence, consistent with the requirements of
13 *Petrocelli v. State*, 101 Nev. 46 (1985).  Petitioner has not
14 demonstrated that this finding is inconsistent with Supreme Court
15 precedent.  *See, e.g.*, *Huddleston v. U.S.*, 485 U.S. 681, 685 (1988)
16 (". . . such evidence [of prior bad acts] should be admitted if
17 there is sufficient evidence to support a finding by a jury that
18 the defendant committed the similar act.").

19      Second, petitioner's claim does establish that his counsel's
20 conduct fell below the "objective standard of reasonableness"
21 established by *Strickland*, or that, even accepting petitioner's
22 argument that his counsel erred, the result of the proceeding would
23 have been different had he challenged the prosecution's use of the
24 Oregon victim's statements, given the overwhelming nature of the
25 evidence against the petitioner.  Even had the trial court denied
26 admission of the statements by the Oregon victim, the trial court
27 concluded that the fact of the prior conviction itself was
28 admissible, given its proximity in time.  (Exhibit GG at 14-16).

27

**For these reasons, Ground 1(6)(d) is denied.**

    f. Denial of Ground 1(9)

    In Ground 1(9) petitioner argues that the cumulative effect of his counsel's errors amounted to an unfair trial.  This ground was also raised in his First State Petition, and, upon its denial, he appealed it to the Nevada Supreme Court.  (Exhibit X, Ground 2(e)).  That court concluded, "[T]he cumulative effect of BLACK's alleged errors was insufficient to deprive him of a fair trial because his claims of error are meritless."  (Exhibit CC at 6).  Again, petitioner fails to demonstrate why the Nevada Supreme Court's holding misapplies Supreme Court precedent.  Petitioner failed to show that his counsel's assistance was "so defective as to require reversal of a conviction," as would be required under *Strickland*.  *Strickland*, 466 U.S. at 687.  His claims of ineffective assistance, taken individually or cumulatively, do not adequately establish grounds for habeas relief, and **Ground 1(9) is therefore denied.**

    2.   Claims Defaulted by Nevada Supreme Court

    a. Overview of Claims

    In Ground 1(1)(b)[23] petitioner claims that his counsel was ineffective for failing to inform the jruy about his "goal-oriented activities," which included his efforts to secure a job, a car, and insurance.  Petitioner believes that these efforts demonstrated his desire to put his life together, and would have undermined the

---

[23] Ground 6(1)(e) of Second Federal Petition.

1   allegation that he had the state of mind to commit the sexual
2   assault.
3       In Ground 1(4)(a)[24] petitioner claims that his counsel was
4   ineffective for failing to investigate the break in the chain of
5   custody of the car in which the sexual assault allegedly took
6   place.  According to the petitioner, the state disposed of the car
7   before petitioner had a chance to examine it.  Of particular
8   importance would have been the lack of any evidence such as urine
9   deposits in the back of the car, which would have undermined the
10  victim's version of events.
11      In Ground 1(5)(a)[25] petitioner claims that his counsel was
12  ineffective for failing to interview Kay Barrett, the woman who had
13  discovered the victim "hobbling" half-naked on the road where she
14  was driving.  Petitioner suggests that there was ample evidence to
15  refute Barrett's testimony.
16      In Ground 1(5)(b)[26] petitioner claims that his counsel was
17  ineffective for failing to interview Dr. Bruhn, the state's medical
18  expert who examined the victim following the assault and determined
19  that there had been "probable abuse."  Petitioner claims that his
20  counsel's cross-examinations did not adequately address the
21  doctor's claims.
22      In Ground 1(6)(a)[27] petitioner claims that his counsel failed
23  to object to a number of false and prejudicial statements made
24  during the state's closing arguments.

----

[24] Grounds 3 and 6(1)(d) of Second Federal Petition.

[25] Ground 6(1)(c) of the Second Federal Petition.

[26] Ground 6(1)(c) of the Second Federal Petition.

[27] Ground 6(1)(a) of the Second Federal Petition.

1    In Ground 1(6)(e)[28] petitioner claims that his counsel failed
2  to object to a possible Sixth Amendment violation of petitioner's
3  right to confront the witnesses against him.   According to his
4  argument, because the state relied on statements made by the victim
5  of the petitioner's previous sexual assault in Oregon, petitioner
6  should have been able to confront her in his trial.   Petitioner
7  also claims that there is some dispute as to whether her statements
8  in the previous trial were reliable.

9

10    b. Denial of Grounds 1(1)(b), 1(4)(a), 1(5)(a), and (b), and
11        1(6)(a) and (e)

12    The Nevada Supreme Court denied Grounds 1(1)(b), 1(4)(a),
13  1(5)(a), and (b), and 1(6)(a) and (e) of petitioner's Second
14  Federal Petition as they were presented in his Second State
15  Petition on the grounds that they were untimely and successive
16  pursuant to Nevada statutory authority.   (Exhibits PP and UU).   The
17  court held that because the petitioner simply rehashed the claims
18  he had made in his First State Petition, he could not show cause to
19  overcome the procedural bar, even though he had returned to state
20  court on the order of this court to exhaust his unexhausted claims
21  presented in his First Federal Petition.   (Exhibit UU).   As these
22  claims were denied on independent and adequate state law grounds,
23  to wit, Nev. Rev. Stats. §§ 34.726 and 34.810, the claims do not
24  admit of review in this court's habeas jurisdiction.   *See Coleman*
25  *v. Thompson*, 501 U.S. 722, 729-30 (1991)("the [independent and
26  adequate state ground] doctrine applies to bar federal habeas when

27

28    _____
     [28] Ground 6(1)(b) of the Second Federal Petition.

a state court declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement"). Nor has petitioner shown cause for the procedural default, or any actual prejudice that could be attributed to it, that would allow this court to review the claims. In *Murray v. Carrier*, the Supreme Court stated that to demonstrate cause for a procedural default, a prisoner must be able to "show that some objective factor external to the defense impeded" his efforts to comply with the state procedural rule. 477 U.S. 478, 479 (1986). Further, the Ninth Circuit has held that Nevada's procedural bar against claims that could have been brought on direct appeal, but were not, is an adequate and independent ground sufficient to support a finding of procedural default. *Vang v. Nevada*, 329 F.3d 1069, 1074 (9th Cir. 2003). Petitioner has made no showing that this court should consider his defaulted claims. **Grounds 1(1)(b), 1(4)(a), 1(5)(a), and (b), and 1(6)(a) and (e) are therefore denied.**

> 3.   Denial of 1(1)(d) and 1(2)(e)

Defendants argue that petitioner has waived those claims he raised in his first petition before this court that were deemed exhausted, but which petitioner did not raise in the second petition now before this court. These include 1(1)(d) and 1(2)(e).

Even if the court were to accept that the petitioner did not waive these claims, the court concludes that they should be denied on some of the grounds already articulated in this order. In 1(1)(d), the petitioner argues that his counsel was ineffective for

failing to produce the father of his ex-girlfriend, Frank Pacheco,
who would have testified to Black's character and "goal-oriented
activities," such as his efforts to secure a job and financial
stability.  The court finds that this claim of ineffective
assistance of counsel fails to meet either of the prongs
articulated in the *Strickland* test.  To the extent that
petitioner's counsel failed to interview certain witnesses, or to
pursue the strategy the petitioner suggests he should have, those
failings do not fall below an objective standard of reasonableness,
nor do they establish that there is a reasonable probability that
the outcome of the trial would have been different had petitioner's
counsel conducted the case as he suggests.  The fact that
petitioner was taking steps to put his life on firmer grounds
financially by securing employment and seeking additional
education, even accepted as true, could not have played a part in
the jury's consideration of his culpability for the crime at issue.
It was therefore well within his counsel's reasonable discretion
not to produce a character witness to testify to these things.

    In 1(2)(e) petitioner adds further detail to the principal
claim he asserts in 1(2) that his counsel was ineffective for
failing to investigate the burglary of his apartment following his
arrest.  Specifically, petitioner claims his counsel failed to
"procure" Jennifer Richards, a friend of the victim Britni DeBarge,
to learn about her role in the burglary of petitioner's apartment.
This claim was encompassed in petitioner's principal defense at
trial, that the crime for which he was convicted was part of an
elaborate set-up by the victim, her mother, and her mother's
boyfriend, that included the burglary of his apartment.  Her

testimony would have added little light to petitioner's claim, which was rejected by the jury, and upon all subsequent reviews. It also fails to meet the *Strickland* standard, as petitioner has failed to establish that there was a reasonable probability that the outcome of the trial would have been different had petitioner's counsel pursued this witness as the petitioner claims.  Having presented petitioner's burglary defense during trial, counsel's apparent decision not to present Jennifer Richards for the purpose petitioner describes was clearly within his reasonable discretion, and does not call into question the outcome of the trial.  **For these reasons, Grounds 1(1)(d) and 1(2)(e) are denied.**

   4. Petitioner's Waiver of 1(2)(b), (c) and (d), 1(6)(b), (c) and (f), 1(7)(a) and (b), and 2-9

     Petitioner raised claims 1(2)(b), (c) and (d) and 1(6)(b), (c) and (f), 1(7)(a) and (b), and 2-9 in his First Federal Petition, but the court found those claims unexhausted (Docket 33).  Although Petitioner elected to return to state court to exhaust those claims found unexhausted, he did not re-present these claims in his Second Federal Petition.  The court therefore finds that petitioner has waived these claims.  **For these reasons, Grounds 1(2)(b), (c) and (d) and 1(6)(b), (c) and (f), 1(7)(a) and (b), and 2-9 are denied.**

V.   Certificate of Appealability

     The standard for issuance of a certificate of appealability calls for a "substantial showing of the denial of a constitutional right."  28 U.S.C. §2253(c).  The Supreme Court has interpreted 28 U.S.C. §2253(c) as follows:

> Where a district court has rejected the
> constitutional claims on the merits, the
> showing required to satisfy §2253(c) is
> straightforward: The petitioner must
> demonstrate that reasonable jurists would find
> the district court's assessment of the
> constitutional claims debatable or wrong.  The
> issue becomes somewhat more complicated where,
> as here, the district court dismisses the
> petition based on procedural grounds.  We hold
> as follows: When the district court denies a
> habeas petition on procedural grounds without
> reaching the prisoner's underlying
> constitutional claim, a COA should issue when
> the prisoner shows, at least, that jurists of
> reason would find it debatable whether the
> petition states a valid claim of the denial of
> a constitutional right and that jurists of
> reason would find it debatable whether the
> district court was correct in its procedural
> ruling.

*Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also James v. Giles*, 221 F.3d 1074, 1077-79 (9th Cir. 2000).  The Supreme Court further illuminated the standard for issuance of a certificate of appealability in *Miller-El v. Cockrell*, 537 U.S. 322 (2003).  The Court stated in that case:

> We do not require petitioner to prove, before
> the issuance of a COA, that some jurists would
> grant the petition for habeas corpus.  Indeed,
> a claim can be debatable even though every
> jurist of reason might agree, after the COA has
> been granted and the case has received full
> consideration, that petitioner will not
> prevail. As we stated in *Slack*, "[w]here a
> district court has rejected the constitutional
> claims on the merits, the showing required to
> satisfy § 2253(c) is straightforward: The
> petitioner must demonstrate that reasonable
> jurists would find the district court's
> assessment of the constitutional claims
> debatable or wrong."

*Miller-El*, 123 S.Ct. at 1040 (quoting *Slack*, 529 U.S. at 484).

The Court has considered the issues raised by petitioner, with respect to whether they satisfy the standard for issuance of a

certificate of appeal, and determines that none of the issues raised by the petitioner meets that standard.  Accordingly, the Court denies the certificate of appealability with respect to all issues petitioner has raised.


VI. Underline(Conclusion)

   **IT IS THEREFORE ORDERED** that petitioner's petitions for a writ of habeas corpus (3:03-cv-00292, docket 10; 3:05-cv-00316, docket 2) are **DENIED**.

   **IT IS FURTHER ORDERED** that the Clerk shall **ENTER JUDGMENT ACCORDINGLY**.

   **IT IS FURTHER ORDERED** the certificate of appealability is denied with respect to all issues raised in this petition for a writ of habeas corpus.

   **IT IS SO ORDERED**.

   DATED: This 23rd day of June, 2008.

                              _____
                              UNITED STATES DISTRICT JUDGE

35